WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexandro Luis Gomez, | No. CV-23-00458-TUC-RM |
| Petitioner, | CR-20-01707-RM (EJM) |
| v. | **ORDER** |
| United States of America, | |
| Respondent. | |

Pending before the Court is Movant Alexandro Luis Gomez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 1; Doc. 93 in CR-20-01707-RM(EJM).)[1] Respondent filed a Response (Doc. 15), and Movant filed a Reply (Doc. 30). For the following reasons, the Motion will be denied.

**I.    Background**

Movant was charged by indictment in District of Arizona case number CR-20-01707-RM(EJM) with one count of distribution of fentanyl, a Schedule II controlled substance, resulting in death and serious bodily injury to victim A.L.; one count of distribution of fentanyl; one count of possession of fentanyl with intent to distribute; and one count of carrying a firearm during and in relation to a drug-trafficking crime. (Doc. 30 in CR-20-01707-RM(EJM).)

Movant was initially represented by Jay Marble of the Federal Public Defender, but he later retained Efthymios Katsarelis of Katsarelis Law PLLC. (Docs. 54, 55 in CR-

---

[1] Unless otherwise noted, all record citations herein refer to the docket in the civil case opened in connection with the § 2255 Motion, CV-23-00458-TUC-RM.

20-01707-RM(EJM).) After retaining Mr. Katsarelis as his defense attorney, Movant pled guilty to distribution of a controlled substance (fentanyl), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Docs. 66-68 in CR-20-01707-RM(EJM).) In the plea agreement, the parties stipulated to a base offense level of 38 under USSG § 2D1.1(a)(2), and Movant stipulated for purposes of calculation of the base offense level that A.L.'s death resulted from the use of fentanyl that Movant distributed. (Doc. 67 at 3 in CR-20-01707-RM(EJM).) Movant's advisory guideline sentence was 240 months imprisonment (Doc. 81 at 18 in CR-20-01707-RM(EJM), but the parties stipulated in the plea agreement to a sentencing cap of 204 months (17 years) imprisonment (Doc. 67 at 3 in CR-20-01707-RM(EJM)). On September 28, 2022, this Court sentenced Movant within the plea agreement to a 204-month term of imprisonment, followed by a 5-year term of supervised release. (Doc. 87 in CR-20-01707-RM(EJM).) The remaining counts of the indictment were dismissed on the Government's motion. (*Id.*)

## II.     Legal Standard

A federal prisoner may move to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Collateral attack under 28 U.S.C. § 2255 is "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial." *United States v. Houtchens*, 926 F.2d 824, 828 (9th Cir. 1991).

A convicted defendant asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

When a criminal defendant pleads guilty, he cannot "thereafter raise independent

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," but instead "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). To establish prejudice on a claim of ineffective assistance of counsel challenging the voluntary and intelligent character of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A district court must hold an evidentiary hearing if a § 2255 movant "allege[s] specific facts which, if true, would entitle him to relief" and the "record of the case cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). No hearing is required if the movant's claims are "so palpably incredible or patently frivolous as to warrant summary dismissal," *id.* (internal quotation marks omitted), and if credibility issues can be "conclusively decided on the basis of documentary testimony and evidence in the record," *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (per curiam).

**III. Discussion**

In his § 2255 Motion, Movant alleges that his defense attorney failed to review victim A.L.'s autopsy reports with an independent toxicologist/pathologist. (Doc. 1 at 4; Doc. 1-1 at 4.) Movant argues that such a review was crucial because the autopsy reports disclosed by the Government indicated the victim had multiple drugs in his system, and therefore it is unclear whether fentanyl was the but-for cause of the victim's death. (Doc. 1-1 at 4, 7.) Movant further argues that his attorney's failure to hire a toxicologist/pathologist to conduct an independent analysis deprived him of the opportunity to make an intelligent and voluntary plea. (*Id.* at 4.) In support of these arguments, Movant attaches a report from forensic pathologist Andrew Baker, M.D. (Doc. 1-2.) In the report, Dr. Baker opines that the victim's cause of death should have

been listed as mixed fentanyl and alprazolam toxicity. (*Id.* at 3.)

In response, the Government avers that Dr. Baker's report is not newly discovered evidence but, instead, an independent forensic review that was obtained by Defendant's former defense attorney and discussed with Defendant. (Doc. 15 at 10-11.) The Government argues that, notwithstanding Dr. Baker's opinion, fentanyl was still the but-for cause of A.L.'s death under *Burrage v. United States*, 571 U.S. 204 (2014). (*Id.* at 11.) The Government further argues that defense counsel's advice to accept the plea agreement and maximize mitigation through acceptance of responsibility, instead of pursuing a mixed-toxicity defense, was a reasonable strategic decision under *Strickland*, and that Movant cannot show prejudice. (*Id.* at 11-13.) The Government attaches a declaration in which Movant's former attorney, Mr. Katsarelis, avers that he reviewed Dr. Baker's report but made a strategic decision to present full acceptance of responsibility to the Court and to avoid discussing other drugs in the victim's system at sentencing. (Doc. 15-1 at 2-3.)

Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful to knowingly or intentionally distribute a controlled substance. If the controlled substance is in schedule I or II and "death or serious bodily injury results from the use of such substance," the defendant "shall be sentenced to a term of imprisonment of not less than twenty years or more than life." 21 U.S.C. § 841(b)(1)(C). For a defendant to be liable under this penalty enhancement provision, a jury must find beyond a reasonable doubt that use of the drug was the but-for cause of the victim's death or injury, meaning the victim would not have died or sustained the injury but for use of the drug. *Burrage*, 571 U.S. at 210, 218-19.

In *Burrage*, multiple drugs were present in the victim's system at the time of his death, including heroin metabolites, codeine, alprazolam, clonazepam metabolites, and oxycodone. *Id.* at 207. Medical experts testified that the heroin supplied by the defendant was a contributing factor to the victim's death, but they could not say whether the victim would have lived had he not taken the heroin. *Id.* The Supreme Court reversed the defendant's conviction, finding he could not be liable under the penalty

enhancement provision of 21 U.S.C. § 841(b)(1)(C) absent evidence that the victim would have lived but for his use of the heroin. *Id.* at 218-19.

Movant's case is distinguishable from *Burrage* because A.L.'s autopsy report lists his cause of death as fentanyl toxicity. (Doc. 19 at 3.) The toxicology report reflects that, although alprazolam was present in the victim's system within the therapeutic range, fentanyl was the only drug present at concentrations outside the therapeutic range. (*Id.* at 8.) Dr. Baker opines that A.L.'s cause of death should have been listed as mixed fentanyl and alprazolam toxicity, but he does not opine that A.L. would have lived if not for his ingestion of the fentanyl distributed by Movant. (Doc. 1-2 at 3.) Furthermore, Dr. Baker notes that the foam seen coming from A.L.'s nose and mouth at the death scene, as well as the pulmonary edema present at autopsy, are common manifestations of *fentanyl* toxicity. (*Id.*)

Given this evidence, a jury could reasonably have found the death-resulting sentencing enhancement of 21 U.S.C. § 841(b)(1)(C), thereby exposing Movant to a mandatory minimum sentence of 20 years imprisonment and a maximum sentence of life imprisonment. Furthermore, Count Three of the Indictment carried a potential sentence of five to forty years imprisonment, and Count Four carried a statutory mandatory consecutive prison sentence of five years. (Doc. 81 at 20 in CR-20-01707-RM(EJM).) By pleading guilty, Movant capped his potential sentence at 17 years imprisonment. (Doc. 67 at 3 in CR-20-01707-RM(EJM).) In advising Movant to accept the plea agreement and to maximize mitigation through acceptance of responsibility—as opposed to pursuing a mixed-toxicity defense at trial—Movant's defense attorney made a reasonable and sound strategic decision. Movant has failed to establish deficient performance under the *Strickland* standard.

Furthermore, the record contradicts Movant's assertions that his defense attorney failed to hire a toxicologist/pathologist to review A.L.'s autopsy and toxicology reports and to conduct an independent analysis. Movant's prior attorney, Jay Marble, procured the independent report from forensic pathologist Dr. Baker. (*See* Doc. 1-2 at 2.)

1  Movant's attorneys discussed the report with one another, and Mr. Katsarelis discussed
2  the report with Movant prior to his guilty plea.  (Doc. 15-1 at 2-3.)  Movant decided to
3  plead guilty notwithstanding his knowledge of Dr. Baker's report.² Although Movant
4  may regret his decision in hindsight, the record refutes his contention that his plea was
5  not knowing and voluntary due to defense counsel's failure to obtain an independent
6  report from a toxicologist/pathologist.  Accordingly, in addition to failing to establish
7  deficient performance, Movant has failed to establish prejudice.

   Because the record conclusively shows that Movant is not entitled to relief, the
Court declines to hold an evidentiary hearing.

   **IT IS ORDERED** that the Motion Under § 2255 to Vacate, Set Aide, or Correct Sentence (Doc. 1 in CV-23-00458-TUC-RM; Doc. 93 in CR-20-01707-RM(EJM)) is **denied**.  The Clerk of Court is directed to terminate the Motion in the criminal case (Doc. 93 in CR-20-01707-RM(EJM)), and to enter final judgment against Movant and in favor of Respondent in the civil action, CV-23-00458-TUC-RM.

   Dated this 27th day of February, 2025.

_____
Honorable Rosemary Márquez
United States District Judge

---

² Furthermore, Movant confirmed under oath at his change-of-plea hearing that he was pleading guilty voluntarily and that he understood and was willing to be bound by the terms and conditions of his plea agreement. (Doc. 98 at 6-7 in CR-20-01707-RM(EJM).) At his sentencing hearing, he confirmed that he was satisfied with the services of his attorney. (Doc. 97 at 4 in CR-20-01707-RM(EJM).)